]IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Tampa Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE No. |
| Plaintiff | 8:22-cr-00259-WFJ-AEP |

VS.

ALEKSANDR IONOV
et al.
        Defendants

_____

**MOTION OF DEFENDANT ALEKSANDR IONOV**

**TO COMPEL THE PROSECUTION TO COMPLY
WITH THE BRADY RULE OBLIGATIONS**

Defendant Aleksandr Ionov ("Ionov"), by and through his undersigned counsel, respectfully moves this Honorable Court for an Order compelling the prosecution to disclose to Ionov's defense the exculpatory evidence and materials under the Brady rule as discussed in the Memorandum attached below.

Dated: March 3, 2025.

Respectfully submitted,

_____ George Lambert /signed/

    George Lambert, Esq.
    FL bar #1022697
    421 Poinciana Dr., Sunny Isles Beach, FL 33160;
    Tel. (305) 938 0600; Fax (800) 952 1950
    Email: Office.Law.323@gmail.com
    Attorney for Defendant Alexandr Ionov
    (objections to jurisdiction preserved)

## MEMORANDUM OF POINTS AND AUTHORITIES

### A. Relevant History of This Unusual Case.

The term "unusual" is not the Defendant counsel's term; it is what the Court noted in one of the Orders, Dkt 165. This case is very unusual, under several standards and prongs, and should never have been initiated in the first place.

As this Court is aware, this case was filed on July 26, 2022. Now, there are fundamental changes in the U.S. Department of Justice, whereas, as it seems, politically motivated cases, such as this one, will be eventually deemed unauthorized and eliminated.

Despite extraordinary resources involving, apparently, the work of dozens of agents and millions of dollars spent by on the prosecution of this case under the previous Administration, the outcome for four American defendants was just short of complete dismissal. That outcome involved probation of 36 Months and a special assessment of $100.00. This case should not have been brought in in the first place, representing an unwarranted expenditure on public funds and distracting resources for worthy cases.[1]

The undersigned's appearance as defense counsel for Ionov was filed on February 25, 2025, with the notation that all objections of the said defendant to jurisdiction over him are preserved. Ionov has never set foot in the United States.

### A. Brady Request for Disclosure in Conformity with the Standing Order, Dkt 10, Was Properly Made.

Reference is made to the Standing Order in this Court, originally entered on December 1, 2020, and filed in this Court on July 29, 2022.

---

[1] Ref. Principles of Federal Prosecution, sec. 9-27.200, 'Initiating and Declining Prosecution—Probable Cause Requirement'

The Order entered in this case is clear, and its text is automatically filed, as a reminder, in every criminal case, to quote: "STANDING ORDER REGARDING DUE PROCESS PROTECTIONS ACT. *Under the Due Process Protections Act, the Court confirms the United States' obligation to produce all exculpatory evidence to the defendant under Brady v. Maryland, 373 U.S. 83 (1963), and its progeny and orders the United States to do so. Failing to do so in a timely manner may result in consequences, including exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, and sanctions*." See Dkt 10.

In accordance with that Order, the undersigned counsel promptly requested the Brady materials upon appearing in the case from the prosecution. See Exhibit A, for correspondence with the prosecution's counsel.

### B. The Brady Rule is Based on Controlling Authorities

The relief requested in this Motion is controlled by the Supreme Court's holdings in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), along with thousands of other cases in line with these authorities.

The Order is based on long-established principles governing the prosecution's conduct in criminal cases. In *Brady v. Maryland* and its progeny, the Supreme Court held that the Due Process Clause of the Fourteenth Amendment requires the government to disclose to criminal defendants' material evidence known to the government that is exculpatory or that could be used to impeach a significant government witness. See *Kyles v. Whitley*, 514 U.S. 419, 437 (1995); *United States v. Bagley*, 473 U.S. 667, 676 (1985); *Giglio v. United States*, 405 U.S. 150, 154 (1972). Such evidence is commonly referred to as "Brady material" or "Brady evidence."

The Supreme Court has assigned the government's duty to disclose Brady material to prosecutors. *Skinner v. Switzer*, 562 U.S. 521, 536 (2011) ("Brady announced a constitutional requirement addressed first and foremost to the prosecution's conduct pretrial."); *Giglio*, 405 U.S. at 154 ("[W]hether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor."). The "prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf…." *Strickler v. Greene,* 527 U.S. 263, 281 (1999) (quoting *Kyles*, 514 U.S. at 437 (internal quotation marks omitted)). The Supreme Court explained that "the individual prosecutor," who "alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached." *Kyles*, 514 U.S. at 437; see also *Strickler*, 527 U.S. at 281 (recognizing "the special role played by the American prosecutor in the search for truth in criminal trials").

### C. The Eleventh Circuit Is Fully in Line with Interpretation of the Brady Rule in Courts Nationwide.

The 11th Circuit considered the Brady law in great detail in *U.S. v. Meros* (1989) 866 F.2d 1304. This Circuit reiterated the Brady rule that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87, 83 S.Ct. at 1196–97. The Circuit went on to note: "The Supreme Court has determined that "[i] impeachment evidence, [ ] as well as exculpatory evidence, falls within the Brady rule." See *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985). To establish a Brady violation, a defendant must prove the following: (1) that the Government possessed evidence favorable to the defendant (including impeachment evidence), see id.; (2) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable

4

diligence, see *United States v. Valera*, 845 F.2d 923, 927–28 (11th Cir.1988); (3) that the prosecution suppressed the favorable evidence, see *United States v. Burroughs*, 830 F.2d 1574, 1577 (11th Cir.1987), cert. denied sub nom. *Rogers v. United States*, 485 U.S. 969, 108 S.Ct. 1243, 99 L.Ed.2d 442 (1988); and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different, see *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383."

In sum, as a matter of law, the prosecution did not have grounds to decline to release the documentation that Mr. Ionov's defense requested. See Exhibit A, correspondence.

Prior to filing this Motion, the Defendant's counsel complied with and surpassed the obligations of meet and confer, which are mandatory for civil cases, and also encouraged in criminal cases to act in good faith ("A. Courtesy and Cooperation Among Counsel. COURTESY. Discovery in this district should be practiced with a spirit of cooperation and civility. The district's attorneys and the Court are justifiably proud of the courteous practice that is traditional in the Middle District.") The correspondence with the opposing counsel is annexed hereto. The bottom line is that the prosecution refused to disclose the documents to Mr. Ionov's defense. That declination conflicts with Brady's principles.

The prosecution's declination is particularly unreasonable because the government has already disclosed exculpatory evidence to four defendants in this case, as required before the trial. As mentioned above, the jury trial's outcome turned out to be self-explanatory in that the prosecution had no good case to convince the jury; they were acquitted of one Count, which is rare for federal criminal cases. Thereby, Ionov has the benefit of relying on res judicata, collateral estoppel, and issue preclusion doctrines to assert that this count, on which four defendants were

5

acquitted, is no longer sustainable or instead must be voluntarily dismissed by the prosecution, should the prosecutors follow the case law.

### D. Subject to Requested Brady Materials Present Record Calls for Applying Doctrines Res Judicata, Collateral Estoppel, and Issue Preclusion as to One Count.

As the docket shows, on December 19-20, 2024, all four American defendants who stood trial and were convicted of one count (the other count being dismissed), filed notices of appeal. Even their 36-month probation terms are now on appeal.

As to Ionov, he has never been to the United States. Asserting jurisdiction over Ionov in the U.S. invokes fundamental problems that are not addressed at this time but preserved.

Ionov is a private entrepreneur in Russia known for his interest in international civil rights. There are thousands of such organizations promoting international civil rights worldwide. That includes even an Institute of Human Rights, after the name Rene Cassin, in Strasbourg, France, which has routinely criticized the human rights practices in the U.S. A myriad of violations of civil rights are presented to the European Court of Human Rights in Strasbourg, France, where the U.S. is an observer. It is not illegal to be a proponent of civil rights internationally.

Even if all that has been alleged in the indictment were taken at its face value, the substance is remarkably void of potent and true criminality, and an allegation of a conspiracy against the United States is as stretched as it could get. The amounts alleged in the indictment are extraordinarily modest: "donate another $500" (Para 9); "he had donated $500.00" (at 11); "drafted a letter to defendant IONOV requesting that AGMR provide approximately $12,000 in funding for a "four-city tour" (at 19, but apparently not alleged to have been actually paid); [in 2016] IONOV caused a wire transfer for approximately $3,476.20 to be sent to the APSP". (at 24); "he had participated in a conference with the APSP and had contributed $1,200 toward a protest being

6

conducted by defendant YESHITELA in Washington, D.C." (at 62); "IONOV paid approximately $2,883.44 to purchase airline tickets for defendant ROMAIN and three other members of Black Hammer to fly from Atlanta, Georgia, to San Francisco, California, on March 22, 2022, and to return…" (at 79); Ionov wrote that he "transferred $6,500 to pay for the demonstration" (at 82).

The prosecution probably has banking records proving that Ionov paid or refunded third parties' costs under $10,000. Additionally, a similar amount was merely alleged in correspondence, whether actually paid or not.[2] Even if Ionov had paid that money to African Americans, per their request, to support their objectives of defending the rights of the minority, that could have been treated as a modest charity. The cause of African Americans has been a massive movement since the Johnson Administration in the 1960s and has included hundreds of organizations and entities in the interests of minorities.[3] Moreover, the charity amounts would have been in relatively limited installments spread over several years since 2016, probably easily qualifying for a reasonable amount for charity on the IRS's tax returns.

These very modest amounts, covering the costs of several African Americans, acting under the protection of the First Amendment guaranteeing the freedom of speech, were the basis for the government spending millions of dollars in this case. At most, if they violated anything (which is not adequately alleged on the substance other than referring to the statutes) that belonged to a monetary fine, they are not seeking grandiose length of imprisonment. As the public records show,

---

[2] The undersigned defense counsel represents defendant Ionov pro bono at this time.

[3] By context, if all alleged in the indictment against the African American defendants were true, that merely resonated with Asa Philip Randolph's ideas, although on a minimalistic scale. Randolph realized his vision for a March on Washington for Jobs and Freedom on August 28, 1963, at which Reverend Martin Luther King, Jr. delivered a speech. The undersigned has been unable to find any materials showing Randolph being charged or convicted for that. Instead, even public schools treat him as a rightful activist and organizer.

one African American defendant is over 80 years old. There was no cause to bring defendants to criminal justice.

The numerous questions about the authority to open this case probably belong to the scrutiny under the new officials of the Attorney General's office, wether it was justified in the first place. Thereby, the question begs to be asked, what the prospective recovery of funds was to justify this expensive prosecution riddled with multiple fundamental problems?

Thereby, the major problem is an unwarranted approach to the interests of African Americans to be publicly heard, despite the First Amendment, all that happening after Randolph, King (whose day we celebrate yearly), and celebrities such as Jackie Robinson, breaking the color barrier.

### E. Context for Such Case at Present.

Those alleged modest amounts—if proven or accurate—are in stark conflict with the revelations of the massive mismanagement of public funds by USAID and other agencies, making headlines from February 2025. For example, the controversy about USAID allegedly spending $21 million on "voter turnout" in India is particularly notable. Recent revelations showed that over $7 million was disbursed for elections in Rumania. The USAID's list of such questionable expenditures discovered in February 2025 and making headlines, goes on and on. However, the point is that if the DOJ pursues such minor allegations, as in this case, it provides ammunition to foreign prosecutors and courts to prosecute U.S. officials in absentia involved in paying for such "voter turnout" even if they never went to India or Rumania. Instead, the DOJ should exercise restraint concerning foreigners who have never been to the U.S. The DOJ should cooperate with the defense, even though it should generally focus on the appearance of massive questionable

payments for foreign political issues that originated from home, spending enormous amounts of public funds.

## Conclusion.

The Order to compel the prosecution to disclose the materials and evidence to the defense under the Brady rule should be issued.

Dated: February 28, 2025

Respectfully submitted,

_____ George Lambert /signed/

George Lambert, Esq.
FL bar #1022697
421 Poinciana Dr., Sunny Isles Beach, FL 33160;
Tel. (305) 938 0600; Fax (800) 952 1950
Email: Office.Law.323@gmail.com
Attorney for Defendant Alexandr Ionov
(objections to jurisdiction preserved)

## CERTIFICATE OF SERVICE.

The undersigned certifies that on this day, the foregoing was filed with the ECF/CM/Pacer Efiling Portal to all parties of record.

Dated: March 3, 2025

*/signed George Lambert/*

George Lambert, Esq.